**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**HEIDI SCHAEL,**

      **Plaintiff,**

**-vs-**                     **Case No. 6:09-cv-734-Orl-28DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on review of the Commissioner's denial of Plaintiff's application for Supplemental Security Insurance benefits. For the reasons set forth below, it is **respectfully recommended** that the administrative decision be **AFFIRMED.**

### *PROCEDURAL HISTORY*

Plaintiff filed an application for Supplemental Security Income on July 21, 2004 (R. 62-65). This application was denied initially and on reconsideration (R.33-35, 39-40). A hearing was held before an Administrative Law Judge ("the ALJ"), and an unfavorable decision was issued on October 20, 2005 (R. 9-15). Plaintiff exhausted her administrative remedies and pursued review in this Court and the undersigned issued a Memorandum Opinion & Order reversing and remanding the Commissioner's decision pursuant to sentence four of 42 U.S.C. §405(g). (*See* Case No. 6:06-cv-343-ORL-DAB-opinion reprinted at R. 194- 206).[1] In its Opinion, the Court found that substantial evidence supported the ALJ's determination that Plaintiff retained the residual functional

---

[1] In that case, the parties consented to the jurisdiction of the United States Magistrate Judge.

capacity ("RFC") for work at all levels of exertion (R. 197-202), however, the Court held that the ALJ erred by relying exclusively on the Medical-Vocational Guidelines ("the Grids"), 20 C.F.R. pt. 404, subpt. P, app.2, in evaluating whether Plaintiff could perform work that exists in the national economy (R. 205-06). The Court held that the impact of Plaintiff's mental issues on the occupational base available to her "must be addressed by a [vocational expert]" ("VE") (R. 205-06).

Consistent with the Court's Order and Judgment, the ALJ conducted a supplemental hearing following the remand, and obtained VE testimony, as well as additional testimony from Plaintiff and updated records (R. 280-305). On November 9, 2007, the ALJ issued a second unfavorable decision (R. 175). On February 27, 2009, the Appeals Council denied Plaintiff's request for review (R. 168-70A), making the second decision the final decision of the Commissioner. Plaintiff has timely filed a civil action in this Court, the matter has been briefed and this case is now ripe for review under section 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3).

### *NATURE OF CLAIMED DISABILITY AND SUMMARY OF EVIDENCE*

Plaintiff alleges disability beginning on July 1, 2004, due to schizophrenia, bipolar disorder, partial attention deficit hyperactivity disorder (ADHD), borderline personality traits, and depression (R. 62, 289). Plaintiff was thirty-one years old at the time of the ALJ's second decision (R. 62), with an eighth grade education, an earned GED[2] in December 2006, and no past relevant work experience (R. 283-85).

The medical evidence prior to remand is set forth in the Court's earlier opinion and, in the interests of privacy and brevity need not be repeated here, except as is necessary to address Plaintiff's objections. By way of summary, Plaintiff complained of hearing voices, panic attacks, getting angry

---

[2]Sometimes referred to as a General Equivalency Diploma, the General Education Development tests are commonly accepted as a high school equivalency credential.

and hurting herself, experiencing violent outbursts, depression, and fatigue. She has a history of issues with drugs and alcohol abuse, and issues with domestic violence. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ, in his first decision, found that Plaintiff suffered from bipolar disorder; attention deficit hyperactivity disorder and borderline personality disorder, with global assessments of functioning in July 2004 of 55 and in August 2004 of 65, which were "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. This Court found that the evidence supported that assessment.

The evidence developed on remand is set forth in the decision under review (R. 175-88). Following remand, the claimant's updated medical treatment records from Circles of Care ("COC") were provided (R. 245–76), but, as noted by Plaintiff, these updated COC records contain duplicates of records that were filed before the date of the remand (*Cf*. R. 131-36 and R. 265- 76). The few new records (R. 245-63) are critical to the Court's review of the decision and are therefore set forth at length herein.

The records show that, on October 18, 2005, Plaintiff presented to her nurse practitioner, having not been seen since July (R. 264). She was tearful, complained of domestic abuse, and demanded benzodiazepine medication. Examination indicated that she was oriented times three and without suicidal ideation. Zoloft and Seroquel were prescribed. *Id.*

The records indicate that Plaintiff entered a detoxification program in November 2005, was discharged a day after admission, and has had no subsequent hospitalizations (R. 262). She reported smoking marijuana "off and on" and other drug use in a December 2005 visit. *Id.* On examination,

Plaintiff was "cognitively intact" and very cooperative, reporting mood swings, thoughts racing and difficulty sleeping. *Id.*

In February 2006, Plaintiff experienced a "significant decrease in her auditory hallucinations," and reported she had been "clean since November [2005]" (R. 260). On return visit May 4, 2006, Plaintiff acknowledged her past abuse of alcohol and drugs, and indicated that "the only time when she will hallucinate" is while using these substances (R. 259). On examination, there was no evidence of delusions, hallucinations or preoccupation; affect was appropriate; mood was dysphoric, and judgment and insight were fair. *Id.* Plaintiff returned for a June 2006 visit for medication management (R. 258). She reported abstaining from drugs or alcohol.

On July 17, 2006, following a "nasty breakup" with her boyfriend, Plaintiff presented to Circles of Care for a comprehensive psychological evaluation (R. 252-57). She was noted to exhibit impaired attention and concentration, a constricted or blunt affect, a depressed mood, and paranoid thought content (R. 253). Her speech was clear and coherent, her thought processes were grossly logical, and her attitude, insight and impulse control were all within normal limits. *Id.* She was noted to be a "present victim" of violence/domestic abuse (R. 254). She reported that she did not drive, that she worked at Job Link and had a gas card, and that she obtained rides from her neighbors (R. 256). Her GAF score was assessed as 55, with a high of 55-60 for the past year (R. 257).[3] Her physician noted that Plaintiff "does not seem actively hallucinating" and had good eye contact, good manners and good impulse control in the office (R. 253).

---

[3]"The GAF score is meant to be a procedure for measuring overall severity of psychiatric disturbance. A rating of 51 to 60 indicates some moderate symptoms (e.g., a flat affect and circumstantial speech, occasional panic attacks) OR some difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Sensabaugh v. Astrue* 2009 WL 5171758, 1 (M.D. Fla. 2009) (slip opinion) *citing* Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 34 (4th ed.1994).

She presented next on October 13, 2006, seeking sedatives and "paperwork that she needed to have signed by an M.D. in order to prove to Job Link that she is unable to work." (R. 248). It was noted that she had a "consistent history of not showing up to appointments." *Id.* On examination, there was no evidence of hallucinations or delusions, or any other obsessive-compulsive preoccupations; affect was appropriate; mood was neutral; memory was intact. Plaintiff was described as "quite manipulative" and it was noted that she was goal directed, with fair insight and judgment. *Id.* Her medication requests were declined.

She returned to COC again on January 26, 2007, after missing several appointments (R. 246). She requested Ambien for sleep, but acknowledged that her provider did not want to prescribe this medication because of her Lortab use. She also wanted Klonopin for anxiety, but this was refused because of her Vistaril and Seroquel use (R. 246). Again, the treatment notes indicate her focus on obtaining medications (she was "quite manipulative in her requests and focus"). Her mental status examination showed no evidence of hallucinations or delusions, or any other obsessive-compulsive preoccupations; affect was appropriate; mood was neutral; memory and cognition were intact; and insight and judgment were fair. *Id.*

On March 23, 2007, the last office visit of record, she returned for follow-up, reporting that she had been recently fired and had temporarily relapsed with alcohol (R. 245). On examination, Plaintiff had "no psychotic symptoms," no hallucinations or delusions, and no obsessive-compulsive preoccupations. She denied any suicidal or homicidal thoughts, and her mood, affect, and cognition were normal (R. 245).

In addition to the treatment records, Plaintiff appeared at hearing and testified as to her alleged limitations. A vocational expert also appeared and testified.

The ALJ found that Plaintiff's severe impairments were bipolar disorder, ADHD, borderline personality disorder, and a history of alcohol and drug abuse, in sustained remission (R. 182 Finding 2). The ALJ determined that Plaintiff's impairments did not meet or medically equal one of the impairments listed in the Listing of Impairments (R. 182-83), and found that Plaintiff had the RFC to perform at least a full range of simple, repetitive light work activities, with minimal public contact (R. 184 Finding 3). Relying on the testimony of the VE, the ALJ determined that there were jobs in significant numbers in the national economy that Plaintiff could perform (R. 187 Finding 8), and therefore, Plaintiff was not disabled (R. 188 Finding 9).

## *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable

as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Here, the ALJ proceeded through the analysis to the fifth and final step. It appears that Plaintiff challenges the decision at the second step.

Plaintiff asserts that the ALJ's determination is not based on substantial evidence in that the decision "fails to properly consider the substantial medical and other evidence of record accruing after April 11, 2005, the date of the last Psychiatric Review Technique by a Non-Examining Medical reviewer." (Doc. No. 15 at 11). Plaintiff also contends that the ALJ erred in not obtaining an "updated" Psychiatric Review Technique Form ("PRT form"). The Court is unpersuaded on either contention.

The ALJ did, indeed, set forth and consider the medical evidence cited above. Plaintiff acknowledges as much, but attacks the decision as "lopsidedly inaccurate," in that the ALJ "mentioned only portions of the COC records that would support a denial of her claim." (Doc. No. 15 at 12). Plaintiff contends that other portions of the record arguably support her allegations. This contention, however, misses the mark. The issue on review is not whether some evidence supports the application but whether substantial evidence supports the administrative decision. As noted in *Moore v. Barnhart,* 405 F. 3d 1208 (11th Cir. 2005), a case cited by Plaintiff:

> To the extent Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from "re-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner] . . . even if the evidence preponderates against" the decision.

405 F. 3d at 1213 (internal citation omitted). Here, the ALJ found (and Plaintiff reluctantly acknowledges) that her symptoms markedly improved after she stopped abusing drugs and alcohol (R. 184-85). While Plaintiff continued to have ongoing issues with pill-seeking behavior and other life management issues, the ALJ's conclusion that Plaintiff's condition was relatively stable when she was sober is supported by the substantial evidence detailed above.[4] As such, it must be affirmed.

Plaintiff next contends that the ALJ erred in failing to obtain an updated PRT form and failing to discuss whether her borderline personality disorder meets or equals a Listing. In general, a PRT form is completed to determine whether a claimant has a severe mental impairment. 20 C.F.R. § 416.920a(a). Here, the ALJ found that Plaintiff had a severe mental impairment and continued the analysis to step five in the sequential evaluation process. The decision references a April 2005 PRT

---

[4]To be sure, there is record evidence of Plaintiff's difficulties keeping a job and dealing with domestic violence. On the other hand, Plaintiff was able to earn her GED and take care of her son. Although Plaintiff contends that the daycare voucher she received from the state was due to an agency determination that it is too stressful for her to take care of her son full time, she also testified that she was already receiving day care through the Job Link program and asked the state for a voucher "because I don't have money to pay for the one from the Job Link." (R. 291-92).

form completed by Dr. Bee, and cited and adopted, in large measure, by the ALJ. Plaintiff cites to *Moore, supra*, as support for her contention that even though a PRT form was completed with respect to the first administrative decision, the ALJ was required to obtain an updated PRT form on remand. The Court does not read *Moore* so broadly.

In *Moore,* the plaintiff contended that the ALJ had failed to complete a PRT form "or comply with the mode of analysis the form and its accompanying regulations dictate." *Moore,* 405 F. 3d at 1213, citing 20 C.F.R. § 404.1520a-(a). The appellate court noted that the ALJ was required to incorporate the results of this technique into his findings and conclusions. 405 F. 3d at 1213-14. As the Commissioner conceded that the ALJ in *Moore* did not complete the form or comply with its mode of analysis, the Eleventh Circuit reversed the affirmance of the unfavorable administrative decision, stating, in pertinent part:

> Furthermore, the fact that the ALJ complied with the PRTF method and regulations when he first evaluated Moore's claim in 1996, prior to remand, is not sufficient to excuse his failure to do so here. Particularly where Moore has presented non-frivolous evidence suggesting that her mental condition has deteriorated since the vacated 1996 decision, the ALJ's prior evaluation is insufficient to deny Moore another evaluation of her mental impairments' effect on her RFC through the date of the ALJ's 2001 decision.

403 F. 3d at 1214.

The Court finds the present situation to be distinguishable from *Moore*. Here, the ALJ summarized Plaintiff's treatment evidence, including the updated records, in great detail in the current decision (*see, especially,* R. 181-182), specifically applied the PRT Form mode of analysis (R. 182-84) and determined that Dr. Bee's findings were "consistent with the evidence of record, including the treatment notes from Circles of Care, Inc." (R. 185). Moreover, unlike the claimant in

*Moore,* the evidence does not suggest that Plaintiff's mental condition has "deteriorated" since the remand; rather, Plaintiff's psychotic symptomology dissipated as Plaintiff became sober.

The Court is also not persuaded that the ALJ erred in failing to consider whether Plaintiff's borderline personality disorder met or equaled the Listing. The Listing of Impairments in the Social Security Regulations identifies impairments which are considered severe enough to prevent a person from gainful activity. By meeting a listed impairment or otherwise establishing an equivalence, a Plaintiff is presumptively determined to be disabled regardless of his age, education, or work experience. Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment. *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984). However, at this stage of the evaluation process, the burden is on the plaintiff to prove that he or she is disabled. *Bell v. Bowen*, 796 F.2d 1350, 1352 (11th Cir. 1986); *Wilkinson v. Bowen*, 847 F.2d 660, 663 (11th Cir. 1987). In this circuit, a plaintiff must present specific findings that meet the various tests listed under the applicable listing. *Bell*, 796 F.2d at 1353. Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).

Plaintiff acknowledges that the law in this circuit allows for a finding that an ALJ implicitly determined that an impairment does not meet a listing, *see Keane ex rel. Parcelles v. Comm'r of Soc. Sec.*, 205 Fed. Appx. 748, 750 (11th Cir. 2006), *citing Hutchinson v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986), and the Court finds this to be the case here. The ALJ determined that Plaintiff suffered from, among other things, "a borderline personality disorder with a global assessment of functioning rating of 65 in August 2004 and a rating of 55 in July 2006" (R. 182) but she did not have an impairment or a combination of impairments that met or equaled a Listing. He throughly reviewed

the medical and other evidence and evaluated Plaintiff's RFC, eventually concluding that Plaintiff was not disabled by her mental illnesses. Although Plaintiff objects to the failure to provide an explicit evaluation of her borderline personality disorder, she does not correlate the evidence to the specific requirements of the Listing, nor is such a co-relation evident on the record. Plaintiff has not met her burden here.

A final note is in order. Rarely has the Court seen a claimant with a more unfortunate background. The Court recognizes Plaintiff's struggle to remain sober and take care of her child under difficult and challenging circumstances. Her efforts in earning a GED credential and her continuing participation in counseling are to be applauded. That said, SSI is a program designed for persons with disabilities, defined in the law as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The law does not consider the serious social issues Plaintiff faces – domestic abuse, homelessness, drug or alcohol addiction – to be "disabilities" under this definition. While Plaintiff's mental health issues are very real and impact her life to some extent, substantial evidence supports the ALJ's conclusion that Plaintiff was not under a disability and, therefore, the decision must be affirmed.

## CONCLUSION

For the reasons set forth above, it is **respectfully recommended** that the decision be **AFFIRMED.** If this recommendation is adopted, the Clerk should enter judgment accordingly and close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on April 19, 2010.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy